IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> EMMANUEL JOHN, <br><br> Defendant. | 8:19-CR-119 <br><br> MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. 2255 |

## I. INTRODUCTION

A jury convicted defendant Emmanuel John of six counts of felon in possession of a firearm and the Court sentenced him to 290 months imprisonment. After the Eighth Circuit Court of Appeals affirmed John's sentence, John filed a Motion to Vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. Filing 158. For the reasons stated herein, the Court denies John's Motion to Vacate on every ground except for his claim that his counsel failed to properly advise him about potential penalties and pleading guilty. The Court concludes the law requires an evidentiary hearing on those remaining issues.

## II. BACKGROUND

As part of ongoing efforts to combat street crime in the Omaha area, law enforcement executed a search warrant at an Omaha residence on March 23, 2018. Filing 150 at 23–25. During the search, Yien Chiek, a migrant from South Sudan who lived at that residence, offered to assist law enforcement as an informant. Filing 150 at 177–78. Thereafter, Chiek worked with law enforcement as a confidential informant to purchase firearms from targets within the South Sudanese community in Omaha.

1

Acting in his role as a confidential informant, Chiek arranged to purchase a firearm from an individual named Kan Tap. Filing 150 at 29, 191. On July 19, 2018, Chiek met Tap at a gas station parking lot. Filing 150 at 34. Accompanying Tap was John. Filing 150 at 36. Once Tap and John entered Chiek's vehicle, Tap told Chiek to drive to another location to meet an individual named Reuben Rowe, who John had contacted about selling a firearm. Filing 150 at 44. When the three arrived at the other location, Rowe entered the vehicle and sold Chiek a Jimenez pistol. Filing 150 at 44, 48. Chiek, Tap, and John returned to the gas station parking lot, where John told Chiek to call Tap if he wanted to purchase another firearm. Filing 150 at 45, 193–94.

As John had directed, Chiek contacted Tap to purchase another firearm. Filing 150 at 198. The two met at the gas station parking lot with John again accompanying Tap. Filing 150 at 61–63. Rowe later arrived on foot and sold Chiek a Kimber 9 mm pistol. Filing 150 at 66–67.

Later, John contacted Chiek directly without involving Tap through Facebook and text messages and arranged to sell Chiek additional firearms. Filing 150 at 202–03. John met Chiek on August 15, 2018, and sold Chiek a Jimenez handgun and a Star handgun. Filing 150 at 75–76. The two met again on August 21, 23, and 24, during which John sold Chiek four more guns. Filing 150 at 120–21. John acted alone during these last three transactions. Filing 150 at 120–21.

On April 15, 2019, a grand jury charged John with four counts of being a felon in possession in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Filing 1 at 1–2. A superseding indictment was later issued to comply with the Supreme Court's ruling in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Filing 44. This case proceeded to trial on March 3, 2020. Filing 65 (Text Minute Entry). At trial, the Government discovered while reviewing discovery material in preparation for trial that there were two additional gun sales by John that had not been disclosed

2

to the defense. Despite knowing the possibility that he could be reindicted with the additional gun sales, John moved for a mistrial, which the Court granted. Filing 66 (Text Minute Entry).

On June 17, 2020, a grand jury issued a Second Superseding Indictment charging John with six counts of being a felon in possession of a firearm. Filing 86 at 1–3. The case proceeded to a second trial on July 21, 2020. Filing 112 (Text Minute Entry). The jury began deliberations on July 24, 2020. Filing 117 (Text Minute Entry). Later that day, the jury returned a guilty verdict on all counts. Filing 121.

The Court conducted a sentencing hearing on October 21, 2020. Filing 134 (Text Minute Entry). At sentencing, John's counsel objected to the four-level enhancement for the number of firearms involved in the offense, arguing that law enforcement unlawfully manipulated the sentence by conducting multiple firearm transactions with John. Filing 153 at 12–13. The Court overruled the objection. John then spoke at sentencing, where he asserted that Chiek and Tap contacted him and that "[t]hey wanted to make [him] look like the bad guy." Filing 153 at 29.

Before imposing John's sentence, the Court noted John's significant criminal history and that he committed the firearm offenses while on court supervision for a previous felony and shortly after being released. Filing 153 at 29–30. The Court emphasized that John's stint in prison did not deter him whatsoever and that his conduct showed that he was unremorseful for his criminal activity and highly likely to reoffend. Filing 153 at 30–31. The Court then varied upward and imposed a sentence of 290 months incarceration.[1] Filing 135 at 2.

John appealed his sentence, the denial of his entrapment instruction, and the denial of his motion for a mistrial at his second trial. Filing 137. On March 3, 2022, the Eighth Circuit Court of

---

[1] The Court sentenced John to 50 months incarceration for Count I, to be served consecutive to all other counts; 120 months for Counts II and III, to be served concurrent to each other and consecutive to all other counts; and 120 months on Counts IV, V, and VI, to be served concurrent to each other and consecutive to all other counts. Filing 135 at 2.

3

Appeals affirmed this Court's ruling and the sentence imposed. Filing 155; *see United States v. John*, 27 F.4th 644 (8th Cir. 2022). The Eighth Circuit held that the Court appropriately considered John repeatedly transporting and selling firearms, John's prior felony convictions, and the commission of the instant offenses while under supervision. *See John*, 27 F.4th at 651. The Eighth Circuit also held that both specific deterrence and John's perceived lack of remorse weighed in favor of the Court's sentence. *See id.* at 651.

On February 14, 2023, John filed his Motion to Vacate under 28 U.S.C. § 2255. Filing 158. In his Motion, John raises four grounds for relief, all of which involve ineffective assistance of counsel. Filing 158 at 4–8. In general, John faults his defense counsel for failing to dismiss the indictment and seek recusal of the Government's attorney for "prosecutorial misconduct"; to make certain objections at sentencing; and to properly advise him of the Court's ability to vary upward and impose a sentence greater than ten years. Filing 158 at 4–8. After reviewing John's Motion, the Court ordered the Government to respond. Filing 160.

On April 28, 2023, the Government filed its response to John's Motion. Filing 166. An affidavit from John's defense counsel accompanies the response. Filing 167-1. In the affidavit, John's defense counsel states that he advised John about the possible advisory guideline ranges, that each count carried a maximum ten-year term of incarceration, and that the Court could impose consecutive sentences on each count. Filing 167-1 at 3–6. John's defense counsel also avers that he discussed with John the possibility of entering a plea agreement with the Government after the first trial ended in a mistrial, but John did not agree with any of the proposed terms. Filing 167-1 at 6.

### III. ANALYSIS

#### A. Applicable Standards

John brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to request that the sentencing court "vacate, set aside, or correct" a sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011)). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "No hearing is necessary 'if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016). In that situation, the Court must deny the motion. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. On the other hand, when ruling

on a habeas petition requires resolving a factual dispute, generally the Court must hold an evidentiary hearing. *See United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014). For example, conflicting statements from the petitioner and former defense counsel on a material issue raises a question of credibility that usually necessitates an evidentiary hearing, s*ee Dressen v. United States*, 28 F.4th 924, 928 (8th Cir. 2022), so long as "neither statement is facially incredible and both contain 'similar specificity.'" *Witthar v. United States*, 793 F.3d 920, 923 (8th Cir. 2015) (quoting *Franco v. United States*, 762 F.3d 761, 764 (8th Cir. 2014)).

## B. Motion to Vacate

In his Motion, John raises four grounds for habeas relief, each directed at supposed deficiencies in his defense counsel's representation. The Eighth Circuit has stated that ineffective assistance of counsel arguments are best addressed "through collateral proceedings," *United States v. Sanchez*, 789 F.3d 827, 839 (8th Cir. 2015), so there is no procedural infirmity with John raising the issue of his counsel's performance in a habeas proceeding.

"The Sixth Amendment guarantees 'the right to the effective assistance of counsel.'" *Dilang Dat v. United States*, 983 F.3d 1045, 1047–48 (8th Cir. 2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). This right extends to receiving effective assistance when deciding whether to plead guilty or proceed to trial. *See Meza-Lopez v. United States*, 929 F.3d 1041, 1044–45 (8th Cir. 2019). "To prove ineffective assistance of counsel, [John] must show (1) his attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strikland*, 466 U.S. at 688). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' or 'a substantial, not just conceivable, likelihood of a different result.'" *Meza-Lopez*, 929

6

F.3d at 1044–45 (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)). There is a "strong presumption" that counsel rendered reasonable performance. *Id.*

Although John advances four grounds for habeas relief, some of the arguments in each of these grounds are interrelated. For clarity, the Court will address related arguments together rather than addressing each of John's grounds separately. The Court concludes that John fails to clear the high bar of demonstrating or properly alleging that he received ineffective assistance of counsel on all allegations except as to whether his counsel properly advised him of the potential penalties he faced and pleading guilty; on such claims the Court finds that an evidentiary hearing is necessary. Therefore, the Court denies John's Motion in part and will order an evidentiary hearing on the issues of whether John received proper advice on the potential penalties he faced and about pleading guilty.

1. *Failure to File a "Motion to Suppress" and Failure to Move to Recuse*

In his Motion, John accuses the Government of committing "prosecutorial misconduct" and contends his attorney should have taken action in response. John first alleges that his attorney unreasonably failed to file a "Motion to Supress [sic]" after the Court declared a mistrial at his first trial. Filing 158 at 4. Citing "prosecutorial misconduct" and *Brady v. Maryland*, 373 U.S. 83 (1963), John argues that his counsel could have "suppress[ed]" his charges and barred the Government from filing a superseding indictment. Filing 158 at 4. The Court understands John to be asserting that because the Government did not disclose evidence of John's additional gun sales until his first trial, his counsel should have moved to dismiss his charges or to suppress evidence of those additional gun sales. The Government responds that it complied with Federal Rule of Criminal Procedure 16 by turning over evidence of John's prior gun sales before John's second trial and that no *Brady* violation occurred. Filing 166 at 14–15.

7

During John's first trial, the Government discovered videos of John executing two additional gun sales that had not been previously disclosed. Because of the numerous individuals targeted in the gun-trafficking investigation in Omaha, the Government mistakenly believed a different individual was the seller in the videos and did not discover its error until the other individual was indicted and appeared in court. In support of his motion for a mistrial, John's counsel argued that the videos were prejudicial to his entrapment defense and had they been disclosed earlier his defense strategy would have been different. The Court stated that it did not find any misconduct by the prosecution but ordered a mistrial because the prosecution would have been obligated to disclose the videos prior to trial had it correctly identified John.

"Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose any relevant written or recorded statement made by the defendant . . . .". *United States v. Nelson*, 51 F.4th 813, 818–19 (8th Cir. 2022); *accord* Fed. R. Crim. P. 16(a)(1)(B). The Government conceded at John's first trial that the two videos should have been disclosed before trial. When the Government violates Rule 16's disclosure requirements, the court "may order the government to disclose the evidence, grant a continuance, prohibit use of the evidence at trial, or enter any other order that is just under the circumstances." *United States v. Buchanan*, 604 F.3d 517, 526 (8th Cir. 2010) (quoting *United States v. Shepard*, 462 F.3d 847, 866 (8th Cir. 2006)). Factors relevant to the appropriate remedy include "whether the government acted in bad faith and the reasons for the delay in production, whether there was any prejudice to the defendant, and whether any lesser sanction would have been appropriate to secure future government compliance." *United States v. Streb*, 36 F.4th 782, 787 (8th Cir. 2022) (cleaned up).

Although John accuses the Government of "prosecutorial misconduct," he offers no allegations supporting this accusation. The Court found at John's first trial that the Government's

mistake in failing to disclose the videos was inadvertent and declared a mistrial as a remedy upon his counsel's motion. Such a course of action was well within the Court's discretion. *See United States v. Bull*, 8 F.4th 762, 768 n.6 (8th Cir. 2021) (noting the district court's "broad discretion" in remedying violations of Rule 16); *cf. United States v. Hyles*, 479 F.3d 958, 967 (8th Cir. 2007) (holding that even if the Government violated Rule 16, exclusion of evidence was not required and that the Court granting a short continuance to review the evidence was within its discretion); *United States v. Flores-Mireles*, 112 F.3d 337, 340 (8th Cir. 1997) (holding that the district court did not abuse its discretion by not excluding tape recordings of the controlled buys—produced on the first day of trial in violation of Rule 16(a)(1)—and instead granting a six-day continuance so the defense could review the tapes). Thereafter, the Government turned over the evidence of John's additional gun sales after filing the Second Superseding Indictment on June 17, 2020, well in advance of the July 22, 2020, trial. Filing 113 (Text Minute Entry); Filing 86. This disclosure complied with the Government's continuing duty to disclose under Rule 16(c) and gave the defense sufficient time to review the evidence. *See United States v. Green*, 835 F.3d 844, 855 (8th Cir. 2016) (noting that the defense had a week to prepare for belatedly disclosed evidence from a search of the defendant's computer and phones); *United States v. Polk*, 715 F.3d 238, 250 (8th Cir. 2013) (holding that there was no abuse of discretion in admitting evidence when defense counsel had a week to prepare). Any motion to dismiss or suppress based on the late disclosure of the videos would have lacked any basis. Without any explanation for why and how his counsel should have moved to dismiss his charges or suppress evidence, John does not show that his counsel was ineffective.

As to John's invocation of *Brady*, that case is inapposite. "Prosecutors commit a *Brady* violation when they withhold evidence from the defense that is (1) favorable to the accused and

(2) material either to guilt or to punishment." *United States v. Corey*, 36 F.4th 819, 822–23 (8th Cir. 2022). Here, however, the two videos were not exculpatory—in fact, they were the opposite—so their nondisclosure was not a *Brady* violation. See *Nelson*, 51 F.4th at 818 (observing that there was no *Brady* violation because the evidence was "in no way exculpatory"); *Bull*, 8 F.4th at 767 (stating that *Brady* did not apply when the evidence was "not favorable evidence"). John's counsel was not ineffective for failing to raise a *Brady* issue.

John also contends that his counsel should have filed a "motion of recusal" against the prosecutor because of a "conflict of interest" arising from "prosecutorial misconduct." Filing 158 at 8, 15. However, John does not explain what conflict of interest the prosecutor allegedly had that required his disqualification. See *United States v. Sigillito*, 759 F.3d 913, 928 (8th Cir. 2014) ("[T]he defendant . . . must show that an actual conflict of interest is present."); *see also Walker*, 810 F.3d at 580 (outlining that allegations that are "conclusions rather than statements of fact" do not warrant a hearing). To the extent John relies on the Government not disclosing the two videos of gun sales prior to his first trial, the Court has already concluded that the nondisclosure was inadvertent.[2] Further, the Court granted John's motion for a mistrial during his first trial based upon the fact that the two additional videos were not disclosed earlier. John does not show that his counsel was ineffective for failing to move to disqualify the prosecutor because he provides no basis for such a motion. Therefore, John's allegations that his counsel failed to adequately address "prosecutorial misconduct" does not provide grounds for habeas relief.

---

[2] If John is contending that merely filing a second superseding indictment after the mistrial was prosecutorial misconduct, that argument also fails as the Government was entitled to file a new indictment after discovering new evidence. See *United States v. Punelli*, 892 F.2d 1364, 1372 (8th Cir. 1990) (holding that the filing of a superseding indictment based on evidence elicited in the first trial, which ended in a mistrial, was not vindictive).

*2. Objecting to Upward Variance and Alleged Sentence Manipulation*

John also faults his attorney for failing to object to the Court varying upward and to the Government manipulating his sentence by executing multiple firearm sales with him. Filing 158 at 5–6, 13–14. These allegations are demonstrably false. *See Walker*, 810 F.3d at 580 (allegations that are "contradicted by the record" do not warrant a hearing). John's counsel did object and move for a departure on the basis of sentence manipulation at the sentencing hearing. Filing 167-1 at 7; Filing 153 at 7–12; Filing 130 at 1. John's counsel also requested that the Court follow the sentencing guidelines when it came to grouping the firearms offenses. Filing 167-1 at 7; Filing 153 at 16–18. After the Court overruled the objection, denied the departure, and imposed an above-Guidelines sentence, defense counsel appealed the Court's rulings and the reasonableness of the Court's sentence. *See John*, 27 F.4th at 650–51. By raising these issues again in a habeas proceeding under the guise of an ineffective assistance of counsel claim, John is attempting a do-over of his direct appeal. "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."[3] *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)). Therefore, these allegations do not warrant habeas relief.

*3. Failure to Advise About Possible Penalties and Pleading Guilty*

The heart of John's Motion is his allegations that, prior to trial, his counsel did not advise him of the possible penalties he faced, the ability to plead guilty without a plea agreement, and the advantages and disadvantages to pleading guilty instead of going to trial. Filing 158 at 4, 8, 13. According to John, he never received a plea offer from the Government.[4] Filing 158 at 5. John

---

[3] There are exceptions to this rule that permit relitigating issues, but they are inapplicable here. *See United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

[4] John does not fault his attorney for failing to negotiate a plea agreement with the Government or allege a plea agreement existed that his counsel failed to convey to him.

explains that had he been informed of the possibility that the Court could vary upward from the 10-year maximum penalty for his offenses and impose consecutive sentences for each of his felon-in-possession charges he would have pleaded guilty instead of going to trial. Filing 158 at 8.

Whether to plead guilty or go to trial is a critical step in a criminal case, and a defendant has the right to effective assistance when weighing the risks and benefits of pleading guilty. *See Missouri v. Frye*, 566 U.S. 134, 144 (2012); *cf. Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (outlining right to effective assistance of counsel during the plea-bargaining process). "Effective assistance requires the provision of reasonably informed advice on material issues." *Mayfield*, 955 F.3d at 711. Thus, inaccurate guidance on statutory penalties can show that defense counsel rendered inadequate performance during the pre-trial process. *See id.* (characterizing advice that a defendant should not accept a plea agreement because he was facing a twenty-year mandatory minimum as ineffective when "[r]udimentary research would have revealed that the twenty-year minimum did not apply"). To establish prejudice, John must show a reasonable probability that, but for his counsel's incorrect advice, he would have foregone his right to trial, pleaded guilty, and received a lesser sentence. *See Love*, 949 F.3d at 409 (stating that prejudice is established if "accepting a plea offer would have resulted in a lesser sentence"); *Talavera v. United States*, 842 F.3d 556, 558 (8th Cir. 2016) ("When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show [*Strickland*] prejudice, the defendant must show that, but for his counsel's advice, he would have accepted the plea." (quoting *Sanders*, 341 F.3d at 722)).

In his affidavit, John's counsel outlines his discussion with John throughout the pendency of his case. Filing 167-1. After John's arraignment and initial appearance,[5] his counsel explained that each count carried a maximum penalty of ten years of incarceration. Filing 167-1 at 2. He informed John that he could accept a plea deal, cooperate with the government to potentially receive a reduced sentence, plead guilty, or go to trial. Filing 167-1 at 2. John's counsel cautioned him that the guidelines were advisory and that the Court could sentence him above or below these guidelines. Filing 167-1 at 3.

John's counsel further avers that, prior to the first trial, they received a plea offer from the Government whereby John would plead guilty to two counts of felon in possession. Filing 167-1 at 3. While discussing the plea agreement with John, he mentioned that this offer would limit John's sentencing exposure to twenty years. Filing 167-1 at 3. After the first trial ended in a mistrial, John's counsel states that he informed John that if he was found guilty at the second trial the Court could impose consecutive time on each charge. Filing 167-1 at 6.

When defense counsel files an affidavit that conflicts with the allegations made by a habeas petitioner, an evidentiary hearing is usually required. *See Dressen*, 28 F.4th at 928. The Government recognizes that the affidavit contradicts John's allegations, but argues a hearing is unnecessary because John's allegations are "self-serving." Filing 166 at 12. In support, the Government cites *United States v. Apfel*, 97 F.3d 1074, 1077 (8th Cir. 1996), in which the Eighth Circuit held that a petitioner's claim of ineffective assistance failed when the petitioner made an "unsupported and self-serving" allegation that the drug he possessed was l-methamphetamine rather than d-methamphetamine, which at the time would have lowered his guideline range. 97

---

[5] The Court notes that John was advised of the potential penalties for each of his counts at his initial appearances and acknowledged understanding the potential penalties. Filing 17 (audio file); Filing 61 (audio file); Filing 92 (audio file). John was also asked how he pleaded, and he expressed no confusion when he pleaded not guilty. Filing 17 (audio file); Filing 61 (audio file); Filing 92 (audio file).

F.3d at 1075, 1077. The petitioner alleged that he possessed l-methamphetamine because when he used the drugs they "had a caffeine-like effect on him with no long-term effects." *Id.* at 1077. The Eighth Circuit disregarded these allegations as "unsupported and self-serving" and concluded that they did not establish prejudice in light of the entire record of the case, including that the petitioner obtained his drugs from one of the largest methamphetamine dealers in the area. *Id.*

The *Apfel* holding does not stretch as far as the Government desires. Unlike the situation in *Apfel*—in which the petitioner sought to lower his sentence by making speculative statements that were contradicted by the record about the type of drug he possessed—this case presents conflicting accounts of what occurred during attorney-client communications. When a habeas petitioner and former defense counsel provide conflicting statements, the Court must hold an evidentiary hearing "[i]f neither statement is facially incredible and both contain 'similar specificity'" about a contested issue. *Witthar*, 793 F.3d at 923 (quoting *Franco*, 762 F.3d at 764). John alleges several times that his former counsel failed to advise him that he could receive more than ten years in prison, that the Court could vary upward, and that there were benefits to pleading guilty instead of going to trial. Filing 158 at 4, 8, 13. Former defense counsel avers that he did, in fact, explain to John his possible sentencing exposure and about pleading guilty. Filing 167-1. The rest of the record in this case does not directly contradict either statement. While John's allegations lack some detail about the substance of his conversations with his counsel, the Court cannot say that they are facially incredible or not specific enough to warrant a hearing. *Cf. Franco*, 762 F.3d at 764 (vacating denial of a habeas petition without an evidentiary hearing despite the defense counsel's affidavit "provid[ing] specific details as to when" he spoke to the petitioner about filing an appeal and the merits of doing so because the petitioner averred that he asked his attorney to file an appeal and that his attorney never consulted within him about the advantages and

disadvantages of appealing). Therefore, the Court will hold an evidentiary hearing to resolve the issue of (1) whether John's former counsel rendered effective assistance regarding advice about potential penalties and pleading guilty, and (2) whether John was prejudiced by the allegedly deficient performance.

## IV. CONCLUSION

For the foregoing reasons, the Court denies John's Motion to Vacate, Filing 158, on every ground except for his claim that his counsel failed to properly advise him about potential penalties and pleading guilty. The Court will hold an evidentiary hearing on these remaining issues. A subsequent order shall issue scheduling the hearing and appointing John counsel.

IT IS SO ORDERED.

Dated this 25th day of May, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge