IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

EMMANUEL JOHN,

Defendant.

**8:19-CR-119**

**MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. § 2255 AND MOTION TO AMEND**

## I.    INTRODUCTION

On February 14, 2023, Emmanuel John filed a motion to vacate his sentence and conviction under 28 U.S.C. § 2255. Filing 158. After conducting its initial review, the Court denied every ground of John's Motion except for his allegation that his former counsel did not adequately inform him that he could receive a sentence greater than 10 years and about the advantages and disadvantages to pleading guilty. Filing 169. On August 7, 2023, the Court conducted an evidentiary hearing on the issue remaining in John's Motion. Two days after the evidentiary hearing, John filed a Motion to Amend his § 2255 Motion. Filing 177.

The issue currently being addressed by the Court in significant part comes down to a question of credibility. Having observed the testimony of John's former counsel and John firsthand, and having reviewed the record in this case, the Court finds former counsel credible, but does not find John credible. While former counsel testified consistent with his affidavit and the record in this case, there were inconsistencies between John's testimony and the allegations he made in his Motion. The Court also does not find it credible that John was unaware that the Court could vary upward and impose a sentence greater than 10 years' incarceration. Indeed, John admitted at the evidentiary hearing otherwise despite what he contended in his Motion. Based on

1

that finding, and the Court's conclusion that the record shows John's former counsel rendered reasonable performance, John's § 2255 Motion is denied. As to John's Motion to Amend, John does not meet the legal requirements to obtain leave to amend his § 2255 Motion, nor does his proposed amendment outline a viable ground for habeas relief. Therefore, the Court denies John's § 2255 Motion and his Motion to Amend. The Court will not issue a certificate of appealability.

## II.    BACKGROUND

The Court thoroughly recited the background of this case in its previous order, Filing 169, and incorporates it by reference. To provide context for the present ruling, the Court reiterates the following facts. A grand jury issued a Superseding Indictment charging John with four counts of being a felon in possession of a firearm. Filing 44. At the time, each count carried a maximum term of incarceration of 10 years. 18 U.S.C. § 924(a)(2).[1] During trial, the Government discovered that videos of two additional gun sales by John had not been disclosed to the defense prior to trial. Upon John's motion, the Court granted a mistrial. Filing 66 (Text Minute Entry). Before granting the mistrial, the Court informed John that the Government's discovery of John's additional gun sales would permit the Government to bring additional charges, but John persisted in his motion for a mistrial. Filing 153 at 9.

Thereafter, on June 17, 2020, a grand jury issued a Second Superseding Indictment charging John with six counts of being a felon in possession of a firearm. Filing 86 at 1–3. The case proceeded to a second trial on July 21, 2020. Filing 112 (Text Minute Entry). The jury began deliberations on July 24, 2020. Filing 117 (Text Minute Entry). Later that day, the jury returned a guilty verdict on all counts. Filing 121.

---

[1] In 2020, 18 U.S.C. § 924(a)(2) provided a maximum penalty of 10 years for being a felon in possession of a firearm, but in 2022 Congress amended the statute to impose a maximum penalty of 15 years for that offense. *See* Safer Communities Act, Pub. L. No. 117-159, June 25, 2022, 136 Stat. 1313 (2022).

At sentencing, the Court explained that it had concerns with John's significant criminal history, which included two violent robbery offenses. Filing 153 at 29–30. The Court noted that John had committed the instant offenses—which involved the sale of numerous firearms—while on court supervision and shortly after being released from state prison for a prior attempted robbery conviction. Filing 153 at 29–30. The Court emphasized that John's stint in prison did not deter him whatsoever and that his conduct showed that he was unremorseful for his criminal activity and highly likely to reoffend. Filing 153 at 30–31. The Court further noted that John posed an "extreme danger" to the public. Filing 153 at 30. The Court then varied upward and imposed a sentence of 290 months incarceration. Filing 135 at 2.

John appealed the Court's sentence. Filing 137. On March 3, 2022, the Eighth Circuit Court of Appeals affirmed. Filing 155; *see United States v. John*, 27 F.4th 644 (8th Cir. 2022). The Eighth Circuit held that the Court appropriately considered John repeatedly transporting and selling firearms, John's prior felony convictions, and the commission of the instant offenses while under supervision. *See John*, 27 F.4th at 651. The Eighth Circuit also held that both specific deterrence and John's perceived lack of remorse weighed in favor of the Court's sentence. *See id.* at 651.

John filed his Motion to Vacate Under 28 U.S.C. § 2255 on February 14, 2023, which asserted that John's counsel was unconstitutionally ineffective. In general, John faulted his defense counsel for failing to dismiss the Second Superseding Indictment and seek recusal of the Government's attorney for "prosecutorial misconduct"; to object to the Court's upward variance and to the Government causing supposed sentence manipulation by executing multiple controlled gun sales with him; and to properly advise him on the advantages and disadvantages of pleading guilty and the Court's ability to vary upward and impose a sentence greater than 10 years. Filing

158 at 4–8. After its initial review, the Court ordered the Government to respond. Filing 160. After receiving the Government's response, the Court issued an order determining that it "plainly appeared" that John was not entitled to relief on his allegations that his defense counsel failed to move to dismiss the Second Superseding Indictment and seek recusal of the Government's attorney and to make objections at sentencing. Filing 158 at 4–8. The Court concluded that applicable law suggested that the Court should hold an evidentiary hearing on the issue of (1) whether John's former counsel rendered effective assistance regarding advice about potential penalties and pleading guilty, and (2) whether John was prejudiced by the allegedly deficient performance. Filing 169.

The Court held an evidentiary hearing on August 8, 2023. Filing 174 (Text Minute Entry). John's former counsel, A. Michael Bianchi, testified. Mr. Bianchi's testimony was consistent with his affidavit. Filing 167-1. He explained that he had 32 years of criminal law experience, the entirety of which he had been a member of the Criminal Justice Act panel for the District of Nebraska. In 2019, the Court appointed him counsel for John pursuant to the Criminal Justice Act. Filing 15. Mr. Bianchi testified that he met with John after John was arraigned on his federal charges to go over the Indictment, talk about the United States Sentencing Guidelines, and review John's potential sentencing exposure via application of the guidelines. At this meeting, Mr. Bianchi avers that he informed John that the sentencing guidelines were advisory and explained the risks and benefits of John either going to trial, changing his plea to guilty, entering into a plea agreement, or entering into a cooperation agreement with the Government. Mr. Bianchi testified that he told John that he faced a potential term of imprisonment of up to 10 years per count.

As John's criminal case progressed, Mr. Bianchi obtained a plea offer from the Government in which John would plead guilty to two counts of being a felon in possession of a

firearm. Gov. Ex. 1.[2] Mr. Bianchi testified that he explained to John that the plea agreement would limit John's total potential sentence to 20 years in prison if the Court imposed consecutive sentences on each count, although he did not expect that to occur. Mr. Bianchi attested that he mentioned to John the possibility of the Court departing upward from the sentencing guidelines. Around this time, Mr. Bianchi and the Government reached out to the probation office about the potential guideline range John faced. D. Ex. 101. The probation office calculated that John's guideline range was likely 84 to 105 months in prison, D. Ex. 101, which Mr. Bianchi relayed to John. Mr. Bianchi informed John that, in his experience, judges in the District of Nebraska typically sentenced at the lower end of the sentencing guideline range.

Mr. Bianchi testified that John had a proffer interview with Government, but that the Government indicated that John was fully forthcoming in the interview. Mr. Bianchi attested that he told John that he had concerns that John would not receive a downward departure at sentencing for providing substantial assistance because of what occurred during the proffer. John decided not to enter into a plea agreement with the Government and instead went to trial.[3]

After John's first trial ended in a mistrial, Mr. Bianchi testified that he performed legal research regarding whether the Court could impose consecutive sentences for John's firearm charges and if that accorded with the grouping rules under § 5G1.2 of the sentencing guidelines. The fact that Mr. Bianchi conducted such research for his client was illustrated in the invoices Mr. Bianchi submitted for his services. D. Ex. 105 at 3. As the second trial approached, Mr. Bianchi met with John at Douglas County Corrections over video (due to the COVID-19 pandemic) and explained that John faced up to 60 years imprisonment on the six firearm charges. Mr. Bianchi

---

[2] The Court will cite exhibits offered at the evidentiary hearing as either "D. Ex." or "Gov. Ex.".

[3] John's current counsel cross-examined Mr. Bianchi about whether he went over the stipulated removal provision in the proposed plea agreement. Mr. Bianchi stated that he did not discuss it with John, but on redirect stated he likely would not have discussed it because John was already committed to rejecting the plea agreement.

testified that he informed John that it was possible the Government would agree to a plea agreement for 84 months incarceration and advised him to accept a plea offer given the difficulties with proving an entrapment defense. D. Ex. 103. After counteroffering at 72 months—which the Government rejected—John ultimately elected to go to trial. Mr. Bianchi testified that it appeared John was emboldened after John's first trial ended in a mistrial.

After the jury found John guilty on all six charges at John's second trial, Mr. Bianchi appeared with John at sentencing. During allocution, Mr. Bianchi argued that under the sentencing guidelines the Court could not impose a sentence over 10 years given the grouping rules outlined in § 5G1.2(d). Filing 153 at 16–17. When John's current counsel cross examined Mr. Bianchi on this argument, Mr. Bianchi explained that he was not arguing that the Court did not have the authority to impose a sentence greater than 10 years, but that it would be contrary to the sentencing guidelines.

John also testified at the evidentiary hearing. John averred that when first met with Mr. Bianchi after being arraigned Mr. Bianchi did not discuss his case in detail because he had not received discovery.[4] At his second meeting with Mr. Bianchi, John averred that they discussed a possible entrapment defense, negotiating a plea agreement, and about the sentencing guidelines and grouping offenses under the guidelines. John testified that while discussing the potential sentencing guideline range provided by probation Mr. Bianchi told him that the sentencing guidelines were advisory, but that typically he would be sentenced within the guideline range.

While reviewing the Government's plea offer before the first trial, John averred that he had concerns with the stipulated removal provision in the proposed plea agreement because he is not a United States citizen. John also attested that he was concerned about being sentenced outside the

---

[4] When the Government's attorney confronted John with evidence that Mr. Bianchi had received discovery from the Government prior to meeting John, *see* D. Ex. 106 at 3, John conceded that Mr. Bianchi had received discovery.

guideline range. When he asked Mr. Bianchi about the stipulated removal provision, John testified that Mr. Bianchi informed him that it was standard language. After learning of the Government's second offer for an 84-month sentence, John requested that Mr. Bianchi counter with a 72-month offer, which the Government rejected. D. Ex. 103.

John testified that after the first trial, Mr. Bianchi did not tell him that the additional charges would affect the guidelines and that he was operating under the presumption that his sentencing guideline range was 84 to 105 months. John attested that Mr. Bianchi did not discuss the maximum sentence per count. However, John testified that Mr. Bianchi informed him that he faced a maximum sentence of 60 years. John also testified that Mr. Bianchi told him that the grouping rules under the sentencing guidelines did not allow 60 years, and that instead the guidelines limited his sentence to 10 years. John averred that he did not know he could receive more than 10 years' incarceration as a sentence, and that had he known he would have pleaded guilty. On cross examination, John stated that he had received consecutive sentences on previous state offenses. He also testified during cross examination that he would not have signed a plea agreement unless the stipulated removal language was removed.

### III.    ANALYSIS

### A.  Section 2255 Motion

In his remaining ground for habeas relief, John alleged that Mr. Bianchi did not advise him of the possible penalties he faced, the ability to plead guilty without a plea agreement, and the advantages and disadvantages to pleading guilty instead of going to trial. Filing 158 at 4, 8, 13. John further alleged that he never received a plea offer from the Government, and that he did not know that he could plead guilty without a plea agreement. Filing 158 at 5, 13. According to John, if his counsel had informed him of the Court's ability to vary upward and impose consecutive

sentences on each of his charges, he would have pleaded guilty rather than go to trial. Filing 158 at 8.

A criminal defendant has the right to effective assistance of counsel under the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). The familiar two-pronged test from *Strickland* must be satisfied to succeed on an ineffective assistance of counsel claim: (1) representation that "fell below an objective standard of reasonableness" and (2) prejudice, that is, but for defense counsel's deficient performance "the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 688). The prejudice prong of the *Strickland* test is more than just a "conceivable" chance that the result would have been favorable to the defendant; rather, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044–45 (8th Cir. 2019) (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)). In evaluating defense counsel's representation, courts start with a "strong presumption" that counsel rendered reasonable performance. *Id.* at 1045.

Because deciding whether to plead guilty or go to trial is a critical step in a criminal case, a criminal defendant has the right to effective assistance when weighing the risks and benefits of pleading guilty. *See Missouri v. Frye*, 566 U.S. 134, 143 (2012) ([D]efense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel . . . ."); *Meza-Lopez*, 929 at 1044–45 (discussing effective assistance in the guilty plea context). Part of counsel's duties include furnishing "reasonably informed advice on material issues." *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020). Thus, inaccurate guidance on statutory penalties can show that defense counsel rendered inadequate performance during the pre-trial process. *See id.* (characterizing advice that a defendant should not accept a plea

agreement because he was facing a 20-year mandatory minimum as ineffective when "[r]udimentary research would have revealed that the twenty-year minimum did not apply"). To establish prejudice in this context, a criminal defendant must show a reasonable probability that, but for his counsel's inaccurate advice, he would have foregone his right to trial, pleaded guilty, and received a lesser sentence. *See Love*, 949 F.3d at 409 (stating that prejudice is established if "accepting a plea offer would have resulted in a lesser sentence"); *Talavera v. United States*, 842 F.3d 556, 558 (8th Cir. 2016) ("When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show [*Strickland*] prejudice, the defendant must show that, but for his counsel's advice, he would have accepted the plea." (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)).

In its May 25, 2023, memorandum and order, the Court concluded that that an evidentiary hearing was advisable on John's allegations against Mr. Bianchi's performance during the plea phase. Filing 169 at 13–15. John had provided sufficient allegations to support his claim, and the only evidence in the record directly contradicting his allegations was his former counsel's affidavit accompanying the Government's response. *See United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014) ("Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists. The district court is not permitted to make a credibility determination on the affidavits alone." (internal quotation marks and citation omitted) (quoting *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013))).

The Court has now conducted an evidentiary hearing and may make its ruling. At the hearing, Mr. Bianchi's testimony was consistent with his affidavit and the record. Filing 167-1. Mr. Bianchi, who has significant experience as a criminal defense attorney, averred that he

informed John about the benefits and risks between going to trial or entering into a plea agreement with the Government, that the sentencing guidelines were advisory, that he could receive consecutive sentences on each count, and that John's maximum potential sentence was 60 years. In fact, Mr. Bianchi's fee invoices illustrate that he researched that very issue on John's behalf. Mr. Bianchi attested that he negotiated a plea offer with the Government, that he explained the potential maximum sentence that could be imposed if John accepted that offer, and that ultimately John rejected it. Mr. Bianchi further testified that he discussed potential defenses with John and advised him to enter a plea agreement with the Government given the weaknesses of John's defense at trial. Finally, Mr. Bianchi averred that John never appeared like he was making his decisions unknowingly, unintelligently, or involuntarily. Having observed Mr. Bianchi's testimony firsthand, and because his testimony was consistent with his affidavit and the record of this case, the Court finds Mr. Bianchi to be credible.

As to John's testimony, the Court does not find him to be a credible witness. Unlike Mr. Bianchi, whose testimony reflected his affidavit and the record in this case, John's testimony was not consistent with what he alleged in his Motion. In his Motion, John alleged that Mr. Bianchi "failed to advise of any upward variance," Filing 158 at 5, yet in his testimony John stated that he rejected the Government's plea offer because he was concerned about receiving a sentence outside the guideline range, showing that he knew that the sentencing guidelines are advisory and that upward variances are possible. John also alleged in his Motion that the "only reason" he went to trial his "first time or [his] second time" was because Mr. Bianchi told him "that [he] could not get more than 10 years." Filing 158 at 13. But at the evidentiary hearing, John stated that a significant concern he had about entering a plea agreement with the Government was the stipulated removal provision, something John never mentioned in his Motion. Finally, while John repeatedly stated

10

in his Motion that Mr. Bianchi advised him that he could only receive up to 10 years' incarceration, Filing 158 at 5, 8, 13, at the evidentiary hearing John stated the opposite—that Mr. Bianchi did in fact advise him he could receive up to 60 years if found guilty on all charges alleged in the Second Superseding Indictment.

Beyond these inconsistencies, the Court also finds it incredible that John was not aware that the Court could vary upward and impose a sentence greater than 10 years' incarceration. John was aware of consecutive sentences, having received consecutive sentences on his prior state charges. John also testified that he rejected the Government's plea offer because he was worried about being sentenced outside his guidelines, showing that he was aware that the guidelines were advisory. Despite claiming to be confused by Mr. Bianchi's explanation of how the grouping provision of the sentencing guidelines worked, he never testified that he asked Mr. Bianchi to provide clarification, and Mr. Bianchi credibly testified that John never appeared as if he was making decisions unknowingly, unintelligently, or involuntarily. John was informed at every arraignment hearing that he faced a maximum sentence of 10 years on each charge[5] and admitted that Mr. Bianchi told him that he could receive up to 60 years if found guilty on all charges alleged in the Second Superseding Indictment.

The Court also finds John's allegation in his Motion that he did not know that he could plead guilty without a plea agreement—which he did not mention at the evidentiary hearing—not credible. Not only did John never express confusion when he was asked how he pleaded at each of his arraignments before pleading not guilty, John also has significant experience with the criminal justice system given his criminal history and would understand his ability to plead guilty without a plea agreement. Filing 132 at 11–13.

---

[5] *See* Filing 17 (audio file); Filing 61 (audio file); Filing 92 (audio file).

Having found that Mr. Bianchi's testimony is credible and that John's conflicting testimony is not, the Court easily concludes that Mr. Bianchi's representation fell within the "wide range of professionally competent assistance." *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland*, 466 U.S. at 690). Mr. Bianchi informed John of his four options after being indicted: (1) changing his plea to guilty; (2) going to trial; (3) negotiating a plea agreement; or (4) cooperating with the Government. Mr. Bianchi advised John about the Government's first plea offer and assisted John in a proffer with the Government. He explained to John how the sentencing guidelines operate, that they were advisory, about the grouping rules under the guidelines, and that the Court could sentence outside of the guideline range. He also informed John that he faced a maximum of 10 years per count. When reviewing the Government's first plea offer, Mr. Bianchi told John that it limited his potential exposure to 20 years imprisonment, and informed him that if he was found guilty of all charges on the Second Superseding Indictment he faced a maximum of 60 years imprisonment. At no point did Mr. Bianchi tell John that he was guaranteed a particular sentence or that the Court could not impose a sentence greater than 10 years.[6] *See Meza-Lopez*, 929 F.3d at 1045 (noting that the defendant did not argue "that his counsel guaranteed him a particular sentence by pleading guilty"). After receiving the second plea offer from the Government, Mr. Bianchi advised John to accept it given the weakness of his defense at trial. The Court concludes that Mr. Bianchi more than adequately advised John about the potential penalties he faced and about pleading guilty versus going to trial.

---

[6] John's current counsel questioned Mr. Bianchi about his argument at sentencing that the Court could not sentence above ten years' incarceration. However, as Mr. Bianchi explained at the evidentiary hearing, and as the sentencing transcript clearly shows, Mr. Bianchi was arguing that a sentence greater than ten years would require imposing at least one consecutive sentence, which he asserted conflicted with the grouping rules under the sentencing guidelines. Filing 153 at 16–17. Thus, Mr. Bianchi was not saying that, statutorily, the Court could not lawfully impose a sentence greater than ten years. Furthermore, Mr. Bianchi had explained to John, and John acknowledges understanding, that the sentencing guidelines were advisory.

Alternatively, the Court concludes that John is not credible when he states he would have pleaded guilty rather than going to trial. *See Love*, 949 F.3d at 409 (stating that prejudice is established if "accepting a plea offer would have resulted in a lesser sentence"); *Talavera*, 842 F.3d at 558 ("When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show [*Strickland*] prejudice, the defendant must show that, but for his counsel's advice, he would have accepted the plea." (quoting *Sanders*, 341 F.3d at 722)). The Government made two plea offers to John, which he rejected. One of these plea offers—a Rule 11(c)(1)(C) plea agreement for 84 months incarceration—was quite favorable to John given the six gun charges and his criminal history, but he still decided to proceed to trial. John also emphasized at the evidentiary hearing that he was worried about his immigration status and that he had significant concerns with the stipulated removal provision in the Government's written plea agreement. In fact, John stated during cross-examination that the stipulated removal provision prevented him from pleading guilty.

Furthermore, Mr. Bianchi credibly testified that, after the first trial ended in a mistrial, John became emboldened. Despite overwhelming evidence against him—John's gun sales were all captured on video—John proceeded to trial and attempted to assert an entrapment defense that Mr. Bianchi advised John was unlikely to be instructed on by the Court. John continued to insist on going to trial even after being informed that the Government could indict him on additional charges following the mistrial. Filing 145 at 2–3. During sentencing, although John paid lip-service to being apologetic, he also blamed Chiek and Tap for contacting him and that "[t]hey wanted to make [him] look like the bad guy" in a reassertion of his entrapment defense. The Court noted at sentencing that John's demeanor indicated a complete and total lack of remorse for his actions and that his purported remorse at sentencing was not credible. Filing 153 at 31. "A defendant who

maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders*, 341 F.3d at 723; *see also Hyles v. United States*, 754 F.3d 530, 535 (8th Cir. 2014) ("Nothing in the record indicates [the defendant] wanted to accept the plea offer and would have acknowledged her guilt even if properly advised about the risks of trial."). Therefore, John fails to show a reasonable probability that he would have pleaded guilty.

John cannot establish either prong of the *Strickland* test for ineffective assistance of counsel claims. Accordingly, his remaining ground for habeas relief—and thus his Motion—is denied.

## B. Motion to Amend

The Court last addresses John's Motion to Amend his § 2255 Motion, which John filed two days after the August 7, 2023, evidentiary hearing. Filing 177. In his Motion to Amend, John requests leave to add a claim for ineffective assistance of counsel regarding Mr. Bianchi's allegedly inadequate discussion with John about John's citizenship status and the stipulated removal provision in the Government's first plea offer. Filing 177 at 1–2. John had previously filed his § 2255 Motion on February 14, 2023, which made no mention of Mr. Bianchi's performance regarding John's status or the stipulated removal provision. Instead, in his § 2255 Motion, John faulted his defense counsel for failing to dismiss the indictment and seek recusal of the Government's attorney for "prosecutorial misconduct"; to object to the Court's upward variance and to the Government causing supposed sentence manipulation by executing multiple controlled gun sales with him; and to properly advise him on the advantages and disadvantages of pleading guilty and the Court's ability to vary upward and impose a sentence greater than 10 years. Filing 158 at 4–8.

14

Because the Eighth Circuit entered judgement on John's direct appeal on March 3, 2022, Filing 156, the one-year statute of limitations under 28 U.S.C. § 2255 has expired. *See* 28 U.S.C. § 2255(f)(1)[7] (providing a one-year statute of limitations starting on the date the criminal judgement becomes final); *Kemp v. United States*, 142 S. Ct. 1856, 1860 (2022) (explaining that when a habeas petitioner does not seek review in the Supreme Court in his or her direct appeal "a judgment becomes final when the time to seek certiorari expires—ordinarily, 90 days after judgment"); Supr. Ct. R. 13. The Eighth Circuit has held that when a habeas petitioner seeks leave to amend after the statute of limitations has expired, he or she must show that the amendment "relate[s] back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c)." *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (quoting *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010)). "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Nelson v. United States*, 909 F.3d 964, 982 (8th Cir. 2018) (cleaned up) (quoting Fed. R. Civ. P. 15(c)(1)(B)). The Eighth Circuit has highlighted the narrowness of what it means for a claim to arise out of the same "conduct, transaction, or occurrence":

> To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts. An amended motion may raise new legal theories only if the new claims relate back to the original motion by arising out of the same set of facts as the original claims. The facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim. Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial. The allegations of ineffective assistance must be of the same time and type as those in the original motion, such that they arise from the same core set of operative facts.

*Id.* (quoting *Dodd*, 614 F.3d at 515).

---

[7] John makes no argument that one of the other periods under § 2255(f) applies.

Mr. Bianchi allegedly failing to adequately advise John about his citizenship status and the stipulated removal provision is not the same "type" of ineffective assistance as what John alleged in his § 2255 Motion. John never mentioned the stipulated removal provision or Mr. Bianchi's advice regarding his citizenship status, and instead alleged that Mr. Bianchi failed to adequately advise him on potential carceral penalties and the benefits of pleading guilty versus going to trial. The fact that the § 2255 Motion alleged ineffectiveness regarding the plea phase of the criminal proceeding is not enough to bring further allegations about the stipulated removal provision within that Motion's ambit. *Cf. id.* (stating that alleging ineffective assistance during trial is not enough to satisfy Rule 15(c)). John premised nearly the entirety of his § 2255 Motion on Mr. Bianchi allegedly failing to inform him that the Court could vary upward and impose a sentence greater than 10 years' incarceration. Filing 158 at 5, 8, 13. The allegations in John's § 2255 Motion would not have put the Government on notice that he was challenging his counsel's advice regarding his citizenship status and the stipulated removal provision in the plea agreement. *See id.* (explaining that the facts of the original § 2255 motion "must be specific enough to put the opposing party on notice of the factual basis for the claim"); *Cf. Taylor*, 792 F.3d at 870 ("[T]he facts alleged in Taylor's original claim would not have put the government on notice that he was challenging his attorneys' entire defense strategy."). Therefore, John's Motion to Amend fails to relate back to his § 2255 Motion.

Alternatively, the Court notes that an amendment on this ground would be futile. Habeas proceedings are civil in nature, *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003), and a common ground for denying leave to amend in the civil context is futility of the amendment. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (explaining that a district court may deny leave to amend based on "futility of the

amendment"); *see also Lakoskey v. United States*, No. CIV. 07-3581 (JNE), 2008 WL 4277714, at *1 (D. Minn. Sept. 15, 2008) (determining that amendment of a habeas petition would be futile). Although the standard for futility has not been fleshed out by the Eighth Circuit in the habeas context, it is likely that futility of an amendment to a habeas petition means that it "plainly appears" from the proposed amendment, attached exhibits, and the record that the amendment would not afford the petitioner relief. *Cf.* Rule 4(b) of the Rules Governing Section 2255 Proceedings (providing the standard for when a district court judge initially reviews a habeas petition); *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) (explaining that, in the civil context, futility means that an amended complaint "could not withstand a [Federal] Rule [of Civil Procedure] 12 motion").

Any amendment alleging that Mr. Bianchi was ineffective for failing to adequately advise John on his citizenship status and the stipulated removal provision in the plea agreement would be futile. At the evidentiary hearing, Mr. Bianchi credibly testified that John rejected the plea offers from the Government because John was concerned about the term of incarceration he would receive if he entered into a plea agreement. Mr. Bianchi also explained that he would not have gone over the stipulated removal provision in any great detail because John was not willing to agree to the Government's offer due to concerns about the length of incarceration he would receive. John testified that, when he asked Mr. Bianchi about the stipulated removal provision, Mr. Bianchi told him that it was standard language. Having reviewed many plea agreements itself, which invariably have a stipulated removal provision, the Court finds that this is accurate advice. John never testified that he asked Mr. Bianchi to negotiate with the Government to remove the stipulated removal provision. The record conclusively establishes that Mr. Bianchi did not render ineffective performance with regard to John's citizenship status and the stipulated removal provision.

But even assuming John could show ineffectiveness, John cannot establish prejudice. To establish prejudice with regard to John's decision not to accept a plea agreement, John must show a reasonable probability that, but for his counsel's ineffectiveness, he would have accepted the plea offer and received a lesser sentence. *See Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012) (holding that the habeas petitioner failed to show a reasonable probability that he would have accepted the Government's two proposed plea agreements). At the evidentiary hearing, John averred that a big concern he had about entering into a plea agreement was his citizenship status. Indeed, he testified that the stipulated removal provision prevented him from pleading guilty. Whether the Government offers a plea agreement is entirely within its discretion, and there is no showing that the Government would have agreed to omit the stipulated removal provision. Therefore, there is no reasonable probability that John would have accepted the Government's plea offer if he had been more thoroughly advised about the stipulated removal provision and its potential consequences.

## C.  Certificate of Appealability

Assuming that John wishes to appeal, the Court will determine whether to issue a certificate of appealability. A petitioner under 28 U.S.C. § 2255 may not appeal an adverse ruling unless granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). The Court will only grant a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To show the denial of a constitutional right, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

John has not made such a showing. No reasonable jurists would find it debatable that John's counsel was not ineffective in addressing the Government's inadvertent late disclosure of evidence at trial and that John cannot reassert sentencing issues already addressed in his direct appeal. Reasonable jurists would likewise not find the Court's assessment of John and his former counsel's credibility erroneous, that John's former counsel was ineffective in how he advised John, or that John had any intention of pleading guilty. Therefore, no certificate of appealability will issue.

## IV.    CONCLUSION

For the foregoing reasons, John's allegations in his Motion and the record as a whole conclusively establish that he is not entitled to relief. Accordingly,

IT IS ORDERED:

1.  Emmanuel John's Motion to Vacate under 28 U.S.C. § 2255, Filing 158, is denied;

2.  John's Motion to Amend, Filing 177, is denied; and

3.  No certificate of appealability will issue.

Dated this 10th day of August, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge